# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC. DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No.: 1:18-cv-00317-TWT<br><br>(Consolidated with Nos.: 1:18-cv-00477-TWT and 1:18-cv-00577-TWT)<br><br>(Consolidated Derivative Action)<br><br>Judge Thomas W. Thrash, Jr. |

## DECLARATION OF ROBERT B. WEISER IN SUPPORT OF OPPOSITION TO MICHAEL HARTLEIB'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

I, Robert B. Weiser, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the Commonwealth of Pennsylvania and the State of New Jersey, and I am a co-founder and the Managing Partner of The Weiser Law Firm, P.C. (the "Weiser Firm"). I submit this declaration in Support of the Opposition to Michael Hartleib's Motion for Leave to File Amicus Curiae Brief.

2. My first interactions with Michael Hartleib ("Hartleib") took place nearly a decade ago and concerned a potential shareholder derivative action the Weiser Firm intended to bring on behalf of the company then known as Sprint Nextel

1

Corporation ("Sprint").  During the Spring of 2009, I was in communication with attorney Bruce G. Murphy of The Law Offices of Bruce G. Murphy (the "Murphy Firm"), an attorney who used to occasionally refer clients to the Weiser Firm.  Prior to any communications between Hartleib and the Weiser Firm, Hartleib reached out to the Murphy Firm to discuss a possible shareholder lawsuit regarding the $31 billion writedown Sprint was forced to take in connection with its failed merger with Nextel.

      3.     On or about March 13, 2009, I circulated a draft shareholder derivative complaint to the Murphy Firm that the Murphy Firm could, in turn, circulate to its actual or potential clients. Although I understood that Hartleib was one of the Murphy Firm's potential Sprint clients, I had not yet spoken with Hartleib, nor had anyone else at the Weiser Firm.

      4.     On or around March 21 (or 22), 2009, I was informed that the Murphy Firm had sent a draft retention letter to Hartleib, even though I had not yet directly communicated with Hartleib.  It is my belief that I was attempting to contact Hartleib via telephone around this time.  Although it was my understanding that Hartleib had by this point in time had several discussions with the Murphy Firm, I had not yet spoken to him (nor had anyone else at the Weiser Firm), and I wanted to communicate with him directly before agreeing to represent him.

5. I believe that my first telephonic communication with Hartleib occurred during the evening of March 26, 2009. During this call, among other things, Hartleib claimed that he had spent "hundreds of hours" investigating Sprint, and that he had previously contacted another law firm in order to "give them" the facts and analysis necessary to initiate and prosecute a federal securities class action against Sprint.[1] Hartleib also stated that he was considering moving to be appointed as the lead plaintiff in the federal securities class action and that he would be an ideal plaintiff for that case (based upon his alleged knowledge regarding Sprint). Finally, Hartleib also strongly implied that he was interested in sharing any potential attorneys' fees that the Weiser Firm might recover if we agreed to represent him in connection with a shareholder derivative action on Sprint's behalf.

6. Based on this conversation, it was my opinion that if any of Hartleib's representations were true, the Weiser Firm could not represent him in any derivative action brought for Sprint's benefit. First, if Hartleib had in fact played some role in commencing a securities class action *against* Sprint, that alone would present an obvious conflict of interest that would preclude his representation as a derivative plaintiff. This is because the plaintiffs to the securities class action were seeking to,

---

[1] Robbins Geller Rudman & Dowd, LLP would later lead the securities class action against Sprint and resolve that action for $131 million to be paid to Sprint shareholders.

3

*inter alia*, recover monetary damages from Sprint, whereas any potential derivative plaintiff would be bringing suit on Sprint's behalf and would accordingly be charged in a fiduciary capacity with protecting Sprint's best interests. Second, even if Hartleib had misrepresented or somehow misstated his role in purportedly "causing" a securities class action to be filed against Sprint, I was extremely uncomfortable with his implication that the Weiser Firm share any attorneys' fees with him in some manner.

7. By the morning of March 27, 2009, I had determined that the Weiser Firm would not represent Hartleib in connection with any derivative litigation to be brought for the benefit of Sprint, and I communicated this decision to the Murphy Firm.

8. Thereafter, at or around 9:55 a.m. on March 27, 2009, the Murphy Firm informed Hartleib that neither the Murphy Firm nor the Weiser Firm would represent Hartleib in connection with a shareholder derivative action brought on behalf of Sprint due to Hartleib's "potential conflict" of interest. *See* attached Exhibit A.

9. Hartleib would eventually retain other counsel and file a shareholder derivative action of his own.

10. I would not speak to Hartleib again regarding the Sprint action until the announcement of its proposed settlement. On or around May 20, 2016,

approximately a week before the May 26, 2016 final approval hearing of that proposed settlement, Hartleib called me to express his displeasure with the settlement. During that phone call, Hartleib also implied that he was prepared to withdraw his objection if the Weiser Firm was prepared to enter into some type of "consulting agreement" with him, whereby the Weiser Firm would pay Hartleib hundreds of thousands of dollars for withdrawing his objection. I refused this offer. The settlement was eventually approved over Hartleib's objection, and Hartleib appealed.

11. On March 7, 2017, while the appeal of the trial court's ruling finally approving the settlement of the Sprint derivative action (over Hartleib's objection) was pending, I learned that Hartleib contacted the Weiser Firm's client in the Sprint derivative action directly by telephone on the evening of March 6, 2017 and harassed her. Of course, Hartleib did so despite knowing full well that the Weiser Firm's client was represented by counsel. Although the Weiser Firm's client expressed to Hartleib during the March 6, 2017 telephone call that he should direct all future communications to her counsel and that he should never contact her directly again, just several hours later on the morning of March 7, 2017, Hartleib nonetheless contacted the Weiser Firm's client directly once again, this time by email.

12. Accordingly, on March 7, 2017, our client notified the Weiser Firm about these direct communications from Hartleib, and reported to us that she found the direct communications from Hartleib to be harassing and threatening.

13. In response, the Weiser Firm sent Hartleib a cease and desist letter on March 7, 2017. *See* Exhibit B.

14. Hartleib would respond by email that same day, saying he would refuse to cease contacting the Weiser Firm's client directly. *See* Exhibit C.

15. The Weiser Firm subsequently moved the Kansas Court of Appeals for a protective order requiring Hartleib to stop his campaign of harassment. This order was granted on March 30, 2017. *See* Exhibit D.

16. In 2008, the Weiser Firm contacted Abelson Legal Search ("Abelson"), a well-respected attorney recruiting agency in Philadelphia, Pennsylvania to locate attorneys to assist with a large document review project. As part of the Weiser Firm's contract, Abelson was responsible for vetting potential candidates to ensure the authenticity of their respective resumes. Upon the recommendation of Abelson, the Weiser Firm retained an individual known to the Weiser Firm as Jeffrey Silow. Mr. Silow would later report to the Weiser Firm that his legal name was Alexander J. Silow.

17. Mr. Silow would work on several document review projects for the Weiser Firm until February 2, 2017. On that day, I was contacted by a third party and I learned that no attorney by the name "Alexander J. Silow" could be found on the Pennsylvania Disciplinary Board website. Mr. Silow was then immediately contacted via e-mail by the Weiser Firm to present his Pennsylvania bar identification number. Within minutes, Mr. Silow provided the Weiser Firm with a Pennsylvania attorney identification number, which we then quickly determined corresponded with an "Alexander L. Silow" practicing in Pennsylvania. In a subsequent telephone conversation that morning, Mr. Silow reiterated that he was and is a licensed attorney in Pennsylvania and the District of Columbia in good standing. Minutes after this initial phone call ended, however, Mr. Silow telephoned me and during a second telephone conversation, confessed that he had been disbarred in Pennsylvania over twenty years ago.

18. Immediately, the Weiser Firm: (1) severed all ties with the independent contractor Mr. Silow; (2) notified the judge in every action where Mr. Silow's hours were reported as part of a lodestar calculation as being "attorney time"; (3) self-reported the incident to the Disciplinary Board of the Supreme Court of Pennsylvania; (4) notified the Montgomery County, Pennsylvania District Attorney and pressed criminal charges against Mr. Silow; and (5) instituted a civil action

against Mr. Silow and Abelson Legal Search, which is currently pending in the Pennsylvania Court of Common Pleas for Chester County.

19. Since February 2017, the Weiser Firm learned that the fake bar number provided to the Weiser Firm belonged to Mr. Silow's son, Alexander L. Silow, an actual attorney in good standing in Pennsylvania.

20. As a result of his fraud perpetrated on the Weiser Firm, on December 19, 2017, Mr. Silow has pled guilty to three criminal counts in Pennsylvania, including Unauthorized Practice of Law (42 Pa.C.S. §2524), Unsworn Falsification to Authorities (18 Pa.C.S. §4904(b)), and Securing Execution of Documents by Deception (18 Pa.C.S. §4114).

21. No court contacted by the Weiser Firm as part of its fulsome disclosure regarding this incident required any further evidentiary showing.

22. I am unaware of any ongoing investigation by the Disciplinary Board of the Supreme Court of Pennsylvania regarding the Weiser Firm or any of its attorneys.

23. The following are attached hereto:

    EXHIBIT A    March 27, 2009 e-mail to Michael Hartleib

    EXHIBIT B    March 7, 2017 Cease and Desist Letter to Hartleib

EXHIBIT C    Hartleib's March 7, 2017 e-mail response to Cease and Desist Letter

EXHIBIT D    Order granting Motion for Protective Order, *Ross-Williams v. Bennett, et al.,* Case No. 117,139 (Kan. Ct. App. March 30, 2017)

I declare under penalty of perjury that the above statements are true and correct.

Executed on this the 22nd day of March, 2018, in Berwyn, Pennsylvania.

 */s/ Robert B. Weiser*
ROBERT B. WEISER
THE WEISER LAW FIRM, P.C.
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com

9