# EXHIBIT 1

To Motion for Preliminary Approval of
Shareholder Derivative Settlement

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC. DERIVATIVE LITIGATION | Civil Action No.: 1:18-CV-00317-TWT |

**STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT**

This Stipulation of Settlement and Release Agreement ("Agreement" or "Settlement" or "Settlement Agreement") is made and entered into on February 12, 2020 in connection with the above-captioned action (the "Consolidated Action") by and among the following parties, each by and through respective counsel: (1) Nancy A.K. Weyl and John Weyl (collectively, "Lead Plaintiffs"); (2) Nominal Defendant Equifax, Inc. ("Equifax" or the "Company"), by and through the Demand Review Committee of the Board of Directors of Equifax (the "DRC"); and (3) Individual Defendants Richard Smith, John W. Gamble, Jr., Rodolfo O. Ploder, Joseph M. Loughran, III, David C. Webb, Douglas Brandberg, Robert D. Daleo, Walter W. Driver, Jr., Mark L. Fiedler, G. Thomas Hough, L. Phillip Humann, Robert D. Marcus, Siri S. Marshall, John A. McKinley, Mark B. Templeton, and Elane B. Stock (collectively, "Individual Defendants;" the Individual Defendants together

1

with Equifax, the "Defendants;" and the Individual Defendants collectively with Lead Plaintiffs and Equifax, the "Parties"). This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

I.    RECITALS

A.    The Demand Letters and Creation of the DRC

1.    On September 7, 2017, Equifax announced the data breach that is the subject of this litigation (the "Data Breach").

2.    Between September 11, 2017 and May 15, 2018, the Equifax Board of Directors (the "Equifax Board" or "Board") received multiple shareholder demands made pursuant to O.C.G.A. § 14-2-742 in connection with the Data Breach, including a demand from Lead Plaintiffs (collectively the "Demand Letters"). The Demand Letters asserted that officers, directors, and/or employees of Equifax had engaged in wrongdoing in connection with the Data Breach, including but not limited to breach of fiduciary duties, mismanagement, waste, insider trading, and violations of the federal securities laws. The Demand Letters

2

demanded that the Equifax Board investigate and take appropriate action, including initiating litigation.

3.  On October 18, 2017, the Equifax Board created the DRC, and empowered it to act on the Company's behalf in connection with matters relating to the Demand Letters.

4.  The DRC (which is composed of independent Directors Elane Stock and Scott McGregor) initiated an extensive process, including meeting on over 25 occasions, meeting with Lead Counsel and the cybersecurity expert retained by them, gaining a detailed understanding of the relevant facts, law, and allegations, appearing via counsel for court conferences, participating in extensive settlement negotiations, and undertaking other tasks in order to discharge its duties.

**B.   The Litigation and Lead Counsel's Efforts**

1.  Between January 22, 2018 and March 22, 2018, numerous stockholders, including Lead Plaintiffs, filed derivative complaints naming Equifax as a nominal defendant and various Equifax officers and directors as defendants. The actions were consolidated by the Court into the above-captioned action.

2.    On April 4, 2018, after extensive briefing and oral argument, the Court appointed Nancy A.K. Weyl and John Weyl as Lead Plaintiffs and WeissLaw LLP as Lead Counsel for the above-captioned consolidated action.

3.    On July 12, 2018, Lead Plaintiffs filed a Consolidated Complaint alleging claims derivatively on behalf of Equifax against the Individual Defendants for breach of fiduciary duties, unjust enrichment, waste, insider trading, and violations of the federal securities laws (the "Consolidated Complaint"). Lead Plaintiffs sought, among other things, monetary damages and the implementation of corporate governance and internal control reforms to prevent, or at least to mitigate the risk of, recurrence of the Data Breach.

4.    On July 19, 2018, the Court entered a stipulated order ordering that: (1) the Consolidated Complaint shall serve as the sole operative demand, superseding all prior Demand Letters made pursuant to O.C.G.A. § 14-2-742 in connection with the Data Breach; and (2) Defendants need not answer or respond to the Consolidated Complaint until further order by the Court.

4

5.     Lead Plaintiffs subsequently commenced an extensive investigation into the causes of the Data Breach, Equifax's internal control systems relevant to prevention of future data breaches, the Company's corporate governance practices and procedures, and the laws, rules and regulations relevant to the claims pled in the Consolidated Complaint.

6.     After entering into a confidentiality agreement, Equifax produced over three hundred thousand pages of documents to Lead Plaintiffs regarding the circumstances and events at issue in the Consolidated Complaint.  Lead Counsel established a team of attorneys that would be almost exclusively dedicated to reviewing and analyzing the documents produced for a period of several months.

7.     In order to advise them regarding the cybersecurity issues involved in the Consolidated Action, Lead Plaintiffs retained Robert (Bob) E. Anderson, Jr., who is the Chief Executive Officer of Cyber Defense Labs.  Mr. Anderson previously served as a Principal of the Chertoff Group and as the Executive Assistant Director of the FBI's Criminal, Cyber, Response and

Services Branch.  In that position, he oversaw all FBI criminal and cyber investigations worldwide, international operations, critical incident response, and victim assistance.

8.      Lead Counsel provided Mr. Anderson and his associates, upon their executing an undertaking as required by the confidentiality agreement, the relevant documents produced, as well other publicly available information regarding the circumstances and events at issue.

9.      Lead Plaintiffs also retained Professor Lawrence Hamermesh in order to advise them regarding the Company's corporate governance practices and procedures, and best practices in relation to corporate governance.  Professor Hamermesh is the Emeritus Professor and the former Ruby R. Vale Professor of Corporate and Business Law at Widener University, Delaware School of Law, and the former Director of the Widener Institute of Delaware Corporate and Business Law.

10.     On April 29, 2019, Lead Counsel, together with their cybersecurity expert, Mr. Anderson, met at the Company's Atlanta headquarters with Equifax's Chief Information Security

Officer (the "CISO"), the Company's outside and internal counsel, and the DRC's counsel. At the meeting, factors related to the Data Breach were discussed, as well as Equifax's subsequent remediation steps and further steps which Lead Plaintiffs and their expert proposed to be taken.

11. Lead Counsel also conducted a telephonic conference with the DRC and its counsel to discuss the Consolidated Action, the circumstances and events relating to the Data Breach, and Lead Plaintiffs' views regarding the measures that the Company needed to undertake to remediate alleged internal control weaknesses that they believed led to the Data Breach.

12. On May 1, 2019, in order to continue the dialogue initiated in the telephonic conference, Lead Counsel conducted an in-person meeting with the DRC and its counsel in St. Louis, Missouri. At the in-person meeting, there was an exchange of views regarding the strengths and weaknesses of the case, and how Equifax could best remediate those matters that Lead Plaintiffs had identified as constituting alleged internal control and corporate governance weaknesses.

7

C.    **The Extensive Negotiations and Eventual Agreement to Settle**

1.    The Parties, through their counsel, engaged in a months-long, arm's-length negotiation concerning settlement, assisted by a professional mediator, retired Judge Hon. Layn Phillips.

2.    Among other efforts, the Parties on May 29, 2019 participated in an in-person, full-day mediation conducted by Judge Phillips at his offices in Newport Beach, California.  Although the Parties engaged in substantial dialogue, they did not reach a settlement at that time.

3.    Over the following months, with substantial additional assistance from Judge Phillips and his staff, the Parties continued to engage in substantive dialogue concerning settlement, exchanging numerous proposals but not reaching agreement.

4.    In December 2019, Judge Phillips continued to engage substantively with the Parties, eventually leading to a "double-blind" mediator's proposal.  On December 13, 2019, the mediator's proposal was conveyed to Lead Counsel and the DRC's counsel.  On December 17, 2019, both Lead Counsel and the DRC's counsel conveyed their acceptance of the mediator's

proposal and an agreement in principle to settle this matter on the terms set forth herein was reached.

5.    The Parties thereafter worked cooperatively to document their agreement as set forth herein.

## II.    CLAIMS AND POTENTIAL CLAIMS OF THE SHAREHOLDERS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Consolidated Action have merit.  Lead Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Consolidated Action. Lead Plaintiffs and Lead Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.

Based on their evaluation, Lead Plaintiffs have determined that the Settlement set forth in this Agreement is in the best interests of Equifax.  They base this conclusion upon, among other things, their investigation during the development, prosecution, and settlement of the Consolidated Action, which included, *inter alia*: (i) reviewing all shareholder demands for investigation arising out of the Data Breach and submitted to the Board; (ii) inspecting, reviewing, and analyzing the Company's filings with the Securities and Exchange Commission; (iii) inspecting,

reviewing, and analyzing the Company's Corporate Governance Guidelines, Code of Ethics and Business Conduct, and the charters of the Committees of Equifax's Board of Directors; (iv) inspecting, reviewing and analyzing the hundreds of thousands of pages of documents produced by the Company to Lead Plaintiffs; (v) retaining a cybersecurity consulting expert who additionally analyzed the hundreds of thousands of pages of documents produced by the Company; (vi) retaining a corporate governance expert to advise Lead Counsel in formulating corporate governance and internal control reform proposals; (vii) meeting with the CISO at the Company's Atlanta headquarters; (viii) participating in an in-person mediation session and multiple follow-up discussions; (ix) numerous meetings and communications with Equifax's counsel; (x) numerous meetings and communications with the DRC, directly and through its counsel; (xi) researching corporate governance and internal control best practices; and (xii) researching the applicable law with respect to the claims asserted in the Consolidated Action, and any potential defenses thereto.

## III.   INDIVIDUAL DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Individual Defendants have denied, and continue to deny, each and all of the claims and contentions alleged by Lead Plaintiffs in the Consolidated Action and

10

maintain furthermore that they have meritorious defenses. The Individual Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Consolidated Action, and the Individual Defendants contend that they have numerous defenses to the allegations in the Consolidated Action. The Individual Defendants also have denied and continue to deny, among other allegations, the allegations that Equifax or its stockholders have suffered damage or were harmed in any way by their conduct. The Individual Defendants have further asserted and continue to assert that at all times they acted in good faith and in a manner they reasonably believed to be, and that was, in the best interests of Equifax and its stockholders. Pursuant to the terms set forth below, this Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by the Individual Defendants with respect to any claim of fault, liability, wrongdoing, or damage whatsoever.

Nonetheless, the Individual Defendants have concluded that further litigation could be protracted and expensive and that it is desirable that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement. The Individual Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like

the Consolidated Action, and the benefits to Equifax of the Settlement. The Individual Defendants have, therefore, determined that it is desirable that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

## IV.    POSITION OF EQUIFAX

Equifax, by and through the DRC, after conducting an extensive review of the allegations and the proposed Settlement of this Consolidated Action, approved the terms of this Agreement as being in the best interest of Equifax. In reaching this conclusion, the DRC has taken into account, among other things, the best interests of stockholders, the facts known to the DRC as a result of its investigation, the extensive dialogue and negotiations undertaken between the DRC and Lead Plaintiffs, the mediator's recommendation, the desire of Equifax for finality with respect to issues arising from the Data Breach, the benefits to Equifax of the Settlement, and the uncertainty and risks inherent in any litigation, especially in complex cases like the Consolidated Action. Nothing herein shall be deemed or cited as a determination or admission by Equifax or the DRC as to the fault or liability of any person, or as to the merit or lack thereof of any claim that was or could have been asserted in the Consolidated Action.

Further, Equifax, by and through the DRC, acknowledges that: (i) the DRC was created as a result of Lead Plaintiffs' efforts; (ii) Lead Plaintiffs, through Lead Counsel, met and communicated with the DRC and provided their views as to the claims at issue and the information they believed to be relevant, and Lead Plaintiffs' input was considered by the DRC; and (iii) the DRC investigation was valuable and beneficial to the Company.

## V.    TERMS OF SETTLEMENT AGREEMENT AND RELEASE

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Consolidated Action be finally and fully, compromised, and released, and the Consolidated Action shall be dismissed with prejudice and with full preclusive effect, upon and subject to the terms and conditions of the Agreement, as set forth below:

### A.    Definitions

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.    "Court" means the United States District Court for the Northern District of Georgia.

13

2.  "Current Equifax Stockholder" means any Person who owned Equifax common stock as of September 7, 2017 and who continues to hold such Equifax common stock as of the date of the Settlement Hearing.

3.  "Effective Date" means the first date by which all the events and conditions specified in Section V.F.l of this Agreement have been met and have occurred.

4.  "Fee and Expense Award" means the attorneys' fees and expenses awarded to Lead Counsel by the Court in an amount not to exceed $10,750,000, in recognition of the benefits conferred on the Company and its stockholders by the Settlement.  Such amount approved by the Court (not to exceed $10,750,000) shall cover: (i) all attorneys' fees and expenses that may be due to Lead Counsel, (ii) all attorneys' fees and expenses that may be due to any other counsel participating in the prosecution of the Consolidated Action pursuant to Paragraph b of the Order Appointing Lead Counsel (Dkt. No. 53), and (iii) any service award by the Court to Lead Plaintiffs for their participation in the Consolidated Action.  For avoidance of

14

doubt, the Fee and Expense Award described in this Paragraph shall constitute the only monetary sum payable by or on behalf of Equifax in connection with this Settlement and under no circumstances shall this Settlement be construed to permit an application for fees and expenses by or on behalf of any counsel other than Lead Counsel.

5.     "Final" with respect to the Order and Final Judgment to be entered pursuant to this Agreement, occurs on the first business day following the date the Order and Final Judgment becomes final and unappealable, whether by expiration of time to appeal, affirmance on any appeal taken, or exhaustion of any possible appeal or review, writ of certiorari, lapse of time, or otherwise. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of the Fee and Expense Award.  The failure of the Court to approve the Fee and Expense Award in whole or in part shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

6.     "Judgment" or "Order and Final Judgment" means the final judgment and order of dismissal with prejudice substantially in the form attached hereto as Exhibit D.

7.     "Lead Counsel" means WeissLaw LLP and its "Related Persons," as defined below.

8.     "Notice" or "Notice of Proposed Settlement" means the notice of this Agreement substantially in the form attached hereto as Exhibit C.

9.     "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof.

10.    "Preliminary Approval Order" means the order to be rendered by the Court preliminarily approving the Settlement, substantially in the form attached hereto as Exhibit A.

11.    "Related Persons" means a Person's past or present agents, officers, directors, employees, attorneys, accountants, auditors,

16

advisors, insurers, co-insurers, reinsurers, spouses, immediate family members, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns, each other individual or entity in which any of such Related Person has a controlling interest, and each and all of their respective past and present officers, directors, employees, agents, affiliates, parents, subsidiaries, divisions, attorneys, accountants, auditors, advisors, insurers, co-insurers, re-insurers, heirs, executors, personal representatives, estates, administrators, trusts, predecessors, successors, and assigns.

12.    "Released Claims" means any and all actions, suits, claims, demands, rights, liabilities, matters, issues, and causes of action, including, but not limited to, those arising under contract, statute, or common law, including both known claims and Unknown Claims (as defined herein), whether fixed or contingent or absolute, accrued or unaccrued, liquidated or unliquidated, at law or equity, matured or unmatured, discoverable or undiscoverable, concealed or hidden, that have been, could have been, or in the future might be asserted by Lead Plaintiffs (both

individually and derivatively on behalf of Equifax) and/or any Equifax stockholder derivatively on behalf of Equifax based upon, arising out of, or related to any of: (a) the Data Breach; (b) the allegations, facts, transactions, events, occurrences, acts, disclosures, statements, representations, omissions, or failures to act relating to all matters involved, set forth, referenced to, or alleged or that could have been asserted or alleged in any complaint(s) filed in the Consolidated Action; (c) the allegations, facts, transactions, events, occurrences, acts, disclosures, statements, representations, omissions, or failures to act relating to all matters involved, set forth, referenced to, or alleged in any or all of the Demand Letters and any other demand on the Equifax Board arising out of the Data Breach; (d) any allegations related to or arising out of the purchase or sale of Equifax stock by any Individual Defendant based upon his or her alleged knowledge of material non-public information concerning the Company's cybersecurity; (e) the defense or settlement of the Consolidated Action, any Demand Letter, and any other demand on the Equifax Board arising out of the Data Breach, and/or the

18

Released Claims; and (f) the processes, conduct, actions or inactions, or conclusions of the DRC and its counsel.  "Released Claims" shall not include any claims to enforce this Agreement or any claims to enforce the confidentiality or non-disclosure agreements previously entered into between any of the parties, nor shall it include any securities claims belonging to the plaintiffs or class members in *In re Equifax Inc. Securities Litigation*, 1:17-cv-03463-TWT (the "Equifax Securities Litigation"), as those claims are described in the settlement documentation in that matter.

13.    "Released Persons" shall mean and include Equifax, the DRC, each of the Individual Defendants, and each and all their Related Persons.

14.    "Releasing Parties" means Lead Plaintiffs (both individually and derivatively on behalf of Equifax), Lead Counsel, any other Equifax stockholder on behalf of Equifax, and any Person claiming on any of their behalf.

15.    "Settlement Hearing" means a hearing before the Court to consider and determine whether to approve the terms of the

Settlement as fair, reasonable, and adequate, and in the best interests of Equifax.

16. "Summary Notice" means the Summary Notice, substantially in the form of Exhibit B attached hereto.

17. "Unknown Claims" means any Released Claim(s) that the Releasing Parties do not know of or suspect to exist in their favor at the time of the release of the Released Persons, including claims that, if known by them, might have affected their settlement with and release of the Released Persons, or might have affected their decision not to object to this settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties expressly waive the provisions, rights, and benefits conferred by or under California Civil Code §1542, or any other law of the United States or any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would

20

> > have materially affected his or her settlement with
> > the debtor or released party.

The Releasing Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Releasing Parties to completely, fully, finally, and forever compromise, settle, release, discharge, relinquish, and extinguish any and all Released Claims, known or unknown, suspect or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which do now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.  The Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of the Agreement of which this release is a part.

**B.    Settlement Consideration**

1.    <u>Monetary Consideration</u>:  In consideration of the full settlement and release of all Released Claims, Defendants agree to cause their insurers to pay, and the insurers have agreed to pay, to Equifax the sum of thirty-two million five hundred thousand

21

dollars ($32,500,000), within ten (10) business days following the Court's entry of an order granting preliminary approval of the Settlement.  For avoidance of doubt, Equifax shall look solely to the insurers for payment of this amount, and shall not seek to collect any amount from any Individual Defendant.

2. <u>Agreement to Implement and Maintain Certain Corporate Governance and Internal Control Reforms</u>:   Equifax has implemented and/or is in the process of implementing certain significant corporate governance and internal control reforms relevant to the demand by Lead Plaintiffs ("the Demand") and the allegations in this Consolidated Action, as set forth in Appendix A, Section I hereto.  Equifax, by and through the DRC, acknowledges that the Demand and the Consolidated Action were material factors in the corporate governance and internal control enhancements made after the Demand and the Consolidated Action were filed.  With respect to the reforms and changes set forth in Appendix A, Section I.B., subsections 1.1, 2.1-2.5, and 3-6 (whether adopted before or after the Demand was made or before or after the Consolidated Action was

22

commenced), the Company shall maintain the measures, or substantially similar measures, for a period of at least three (3) years from the date of execution of this Agreement, subject to any of the following: (a) a determination by a majority of the non-management directors that the measure is no longer in the best interest of Equifax, including, but not limited to, due to circumstances making the measure no longer applicable, feasible, or available on commercially reasonable terms; or (b) a determination by the Equifax CISO and approved by a majority of the members of the Board's Technology Committee that the measure is no longer in the best interest of Equifax, including, but not limited to, due to circumstances making the measure no longer applicable, feasible, or available on commercially reasonable terms. The DRC, on behalf of Equifax, acknowledges that the agreement to maintain these measures for a period of at least three (3) years, unless altered pursuant to the above mechanisms, was a direct result of the Demand and the Consolidated Action.

3.  Agreement to Implement and Maintain Additional Corporate Governance and Internal Control Reforms:  In further consideration of the full settlement and release of all Released Claims, Equifax agrees to implement and adopt the Corporate Governance Changes and Internal Control Reforms set forth in Appendix A, Section II, on the terms set forth therein, and subject to Section B.2 above.  The DRC, on behalf of Equifax, acknowledges that the Consolidated Action was a material factor in the decision to implement or maintain these corporate governance and internal control enhancements.

C.  **Procedure for Implementing the Settlement**

1.  Lead Plaintiffs shall, on a business day agreed by them and the DRC, submit this Agreement together with its exhibits to the Court and shall file an unopposed consented to motion and apply for entry of the Preliminary Approval Order, requesting, *inter alia*: (i) the preliminary approval of the Settlement set forth in the Agreement; (ii) approval of the forms and manner of the dissemination of the Notice and Summary Notice to Current Equifax Stockholders; and (iii) a date for the Settlement Hearing,

24

pursuant to Federal Rule of Civil Procedure 23.1, for the Court to consider and determine whether to approve the terms of the Settlement as fair, reasonable, and adequate, including the payment of attorneys' fees and expenses in the amount proposed by the mediator.

2. Notice to Current Equifax Stockholders shall consist of the Notice of Proposed Settlement, substantially in the form attached hereto as Exhibit C and the Summary Notice substantially in the form attached hereto as Exhibit B. The Notice shall provide, among other things, the time and manner in which Current Equifax Stockholders may object to the settlement and the Fee and Expense Award.

3. Within ten (10) business days after the entry of the Preliminary Approval Order, Equifax shall cause the Notice and a copy of the Agreement to be posted on the investor relations section of its website at https://investor.equifax.com. Additionally, within ten (10) business days after the entry of the Preliminary Approval Order, Equifax shall cause the Summary Notice to be published one time in *Investor's Business Daily*. Prior to the Settlement

Hearing, Equifax Counsel shall file with the Court an appropriate affidavit or declaration with respect to posting and publishing the Notices. Equifax shall be solely responsible for paying the costs and expenses related to providing such Notices to its stockholders in the manner ordered by the Court.

4.   Within ten (10) business days after the entry of the Preliminary Approval Order, Lead Counsel shall cause the Notice and a copy of the Agreement to be posted on the firm's website at www.weisslawllp.com. Prior to the Settlement Hearing, Lead Counsel shall file with the Court an appropriate affidavit or declaration with respect to posting the Notice and Agreement.

**D.   Releases**

1.   Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, and discharged the Released Claims (including Unknown Claims) against the Released Persons, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting the Released Claims against the Released Persons. Nothing herein

26

shall in any way impair or restrict the rights of any Party to enforce the terms of this Agreement.

2.      Upon the Effective Date, the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, and their Related Persons, Lead Counsel, and the Plaintiffs, as well as any other law firm that appeared for the Plaintiffs, in the Consolidated Action from all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Released Claims.  Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of this Agreement.

**E.      Lead Counsel's Attorneys' Fees and Expenses and Lead Plaintiffs' Service Awards**

1.      Following agreement on the corporate governance and internal control reforms, the Parties separately negotiated at arm's-length the amount of attorneys' fees and expenses to be paid in connection with this settlement, and ultimately agreed to the Fee and Expense Award as recommended in Judge Phillips'

27

mediator's proposal.  As a result of these negotiations, Equifax agreed to cause an award of attorneys' fees and expenses to be paid to Lead Counsel in an amount not to exceed $10,750,000, subject to approval of the Court.

2.      The Fee and Expense Award shall be made payable via wire payment to Lead Counsel, with such written payment instructions to be supplied by Lead Counsel to Equifax's counsel.

3.      Payment of the Fee and Expense Award shall be made by Equifax as  specified above within fifteen (15) business days after the latter of (i) the date of the entry of the Preliminary Approval Order or (ii) the date on which Lead Counsel provides sufficient written payment instructions to Equifax's Counsel, notwithstanding that the Order and Final Judgment has not yet been entered or become Final, as defined herein, or the existence of any collateral attacks on the Settlement and/or the Fee and Expense Award, including, without limitation, any objections or appeals.  Any reduction, modification, or non-approval of the Fee and Expense Award shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

4.      In the event the Judgment fails to become Final as defined in Section V.A.5 herein, then it shall be the obligation of Lead Counsel to refund the entire Fee and Expense Award to Equifax within ten (10) business days from such occurrence.  In the event the Fee and Expense Award is reduced after payment, Lead Counsel shall refund the overpayment to Equifax within ten (10) business days from such occurrence.

5.      Upon receipt of the Fee and Expense Award, Lead Counsel shall pay or cause to be paid a Service Award in an amount not to exceed $2,500 to each of the Lead Plaintiffs.  The Service Award shall be subject to Court review and approval and paid from (not in addition to) the Fee and Expense Award amount, in consideration of the respective Lead Plaintiffs' service in the Consolidated Action.

6.      It is the intention of the Parties that none of the Released Persons shall have any liability whatsoever for amounts owed for taxes by Lead Plaintiffs or Lead Counsel on account of the payments made or to be made under this Agreement. All tax liability (if

29

any) in connection with this Agreement shall be borne solely and exclusively by Lead Plaintiffs or Lead Counsel.

**F.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

1.    The Effective Date of the Agreement shall be conditioned on the occurrence of all the following events:

   a)    The Preliminary Approval Order has been entered by the Court in the form of Exhibit A, or such other form as expressly agreed by the Parties;

   b)    The Order and Final Judgment has been entered by the Court in the form of Exhibit D hereto, or such other form as expressly agreed by the Parties;

   c)    The Fee and Expense Award has been paid; and

   d)    The Order and Final Judgment has become Final.

2.    The Parties: (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to act in good faith and cooperate to take all reasonable and necessary steps to expeditiously implement the terms and conditions of this Agreement.  If, after making such good faith and cooperative efforts and taking all reasonable and necessary steps to expeditiously implement the

30

terms and conditions of this Agreement, any of the terms and conditions specified above in paragraph V.F.1 do not occur, then this Agreement shall be canceled and terminated subject to paragraph V.F.3, unless the Parties, by and through their respective counsel, mutually agree in writing to proceed with this Settlement.

3.     In the event that the Agreement or Settlement is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions in the Consolidated Action as of the last date before the execution of this Agreement, and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Consolidated Action or in any other action or proceeding.  In such event, the term and provisions of the Agreement, shall have no further force and effect with respect to the Parties and shall not be used in the Consolidated Action or

in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.

**G.     Miscellaneous Provisions**

1.     The Parties intend this Settlement to be a final and complete resolution of all disputes among Lead Plaintiffs, shareholders, and the Defendants with respect to Released Claims.    The Settlement shall not be deemed an admission by any Party as to the merits of any claim, allegation, or defense.    The Parties further agree that the claims are being settled voluntarily after consultation with competent legal counsel.

2.     The provisions contained in this Agreement (including any exhibits attached hereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Consolidated Action or in any other action or proceeding, either presently known or unknown, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the

32

Consolidated Action or in any other action or proceeding, whether civil, criminal, or administrative, and whether presently known or unknown, except in connection with any proceeding to enforce the terms of the Settlement.  The Released Persons may file the Agreement and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

3.    The exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

4.    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

5.    This Agreement and the exhibits attached hereto constitute the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party

concerning the Agreement or any of its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

6.      This Agreement may be executed in one or more counterparts. A faxed or pdf signature shall be deemed an original signature for the purposes of this Agreement.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument. A complete set of counterparts, either originally executed or copies thereof, shall be filed with the Court.

7.      This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Released Persons.

8.      The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, including the permanent injunctions set forth herein, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

34

9.  This Agreement and the exhibits attached hereto shall be governed by, the internal, substantive laws of the State of Georgia without giving effect to that state's choice-of-law principles.

10. Lead Plaintiffs warrant that they have not assigned, encumbered, or in any manner transferred in whole or in part any of the Released Claims.  Lead Plaintiffs further warrant that they have standing to prosecute the Consolidated Action and to effectuate this Settlement.

11. All agreements made and orders entered during the course of the Consolidated Action relating to the confidentiality of information shall survive this Agreement.

12. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

13. The Agreement shall be deemed drafted equally by all parties hereto.

14.    In the event that there exists a conflict or inconsistency between the terms of this Agreement and the terms of any exhibit hereto, the terms of this Agreement shall prevail.

IN WITNESS WHEREOF, the Parties have caused the Stipulation to be executed by their duly authorized attorneys.

[SIGNATURE PAGE TO FOLLOW]

36

WEISSLAW LLP

Joseph H. Weiss
David C. Katz
Mark D. Smilow
Joshua M. Rubin
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: jweiss@weisslawllp.com
      dkatz@weisslawllp.com
      msmilow@weisslawllp.com
      jrubin@weisslawllp.com

Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, Georgia 30307
Telephone: (404) 692-7910
Facsimile: (404) 795-5778
Email: mrogovin@weisslawllp.com

*Attorneys for Lead Plaintiffs Nancy
A.K. and John Weyl and
Lead Derivative Counsel*

WILMER CUTLER PICKERING
HALE AND DORR LLP

Timothy J. Perla
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 536-6696
Facsimile: (617) 526-5000
Email: timothy.perla@wilmerhale.com

Nicole Rabner
1875 Pennsylvania Avenue NW
Washington, DC 20006 USA
Telephone: (202) 663-6876
Facsimile: (202) 663-6363
Email: nicole.rabner@wilmerhale.com

NELSON, MULLINS, RILEY &
SCARBOROUGH LLP
Scott N. Sherman
Georgia Bar No. 642090
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6231
Facsimile: (404) 322-6388
Email:
scott.sherman@nelsonmullins.com

*Attorneys for the DRC and Elane Stock*

KING & SPALDING LLP

Michael R. Smith
Georgia Bar Number:  661689
B. Warren Pope
Georgia Bar Number:  583723
Benjamin Lee
Georgia Bar Number:  443082
1180 Peachtree Street N.E.
Atlanta, GA  30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email:  mrsmith@kslaw.com
            wpope@kslaw.com
            blee@kslaw.com

*Attorneys for Douglas Brandberg,
Robert D. Daleo, Walter W. Driver, Jr.,
Mark L. Fiedler, John W. Gamble, Jr.,
G. Thomas Hough, L. Phillip Humann,
Joseph M. Loughran, Robert D.
Marcus, Siri S. Marshall, John A.
McKinley, Rodolfo O. Ploder, Mark B.
Templeton, and David C. Webb*

TROUTMAN SANDERS LLP

David M. Chaiken
Georgia Bar No. 118618
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216
Telephone: 404-885-3000
Facsimile: 404-885-3900
Email: David.Chaiken@troutman.com

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Steven G. Madison
10th Floor
865 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 443-3200
Email:
stevemadison@quinnemanuel.com

Michael E. Liftik
Meghan A. McCaffrey
1300 I Street
Washington, D.C. 20005
Telephone: (202) 538-8000
Email:
michaelliftik@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com

*Attorneys for Richard Smith*

<u>**Appendix A – Corporate Governance Reforms**</u>

**I.     REMEDIAL MEASURES ALREADY IMPLEMENTED OR IN THE PROCESS OF IMPLEMENTATION**

    **A.     Personnel Changes Made by Equifax Inc. Since the Consolidated Action was Commenced**

1.     The Board appointed a new Chief Executive Officer ("CEO"), Mark Begor, in March 2018, effective April 2018.

2.     Equifax appointed a new Chief Information Security Officer ("CISO"), Jamil Farshchi, in February 2018, who reports directly to the CEO.

3.     Equifax appointed a new Chief Technology Officer ("CTO"), Bryson Koehler, in June 2018, who reports directly to the CEO.

4.     The Board appointed new independent directors in October 2017 (Scott McGregor), March 2018 (Bob Selander), and February 2019 (Heather Wilson).  Mr. McGregor is the former President and CEO of a technology company and has significant technology and cybersecurity expertise.  Mr. Selander has broad-based executive leadership experience in the financial services industry.  Ms. Wilson, a chief data scientist, has deep knowledge of data science and its impact on business transformation.  All three new members serve on the Technology Committee.

5. The Company appointed a new Senior Vice President ("SVP") for Enterprise Risk and Compliance, Kent Lindner, who leads the Risk Office and meets regularly with the Board, the Audit Committee, and the Technology Committee.

## B. Corporate Governance Reforms

Equifax has implemented and/or is in the process of implementing certain corporate governance changes relevant to the Demand and the allegations in this Action. The Board acknowledges that the Demand and the Consolidated Action were material factors in the corporate governance enhancements adopted and the changes made after the Demand and the Consolidated Action were filed. With respect to the reforms and changes set forth in 1.1, 2.1-2.5 and 3-6 (whether adopted before or after the Demand was made or before or after the Consolidated Action was commenced), the Company shall maintain the measures, or substantially similar measures, for a period of at least three (3) years from the date of execution of the Agreement, subject to any of the following: (a) a determination by a majority of the non-management directors that the measure is no longer in the best interest of Equifax, including, but not limited to, due to circumstances making the measure no longer applicable, feasible, or available on commercially reasonable terms; or (b) a determination by the Equifax CISO and approved by a majority of the members of the Board's Technology Committee that the measure is no longer in the best interest of Equifax, including, but not limited to, due to circumstances making the measure

no longer applicable, feasible, or available on commercially reasonable terms. The Board acknowledges that its agreement to maintain certain measures for a period of at least three (3) years, unless altered pursuant to the above mechanisms, was a direct result of the Demand and the Consolidated Action.

### 1.   Strategic Enhancements in Compensation and Performance Reviews Related to Data Security

1.     The Company's compensation clawback policy was revised in March 2018 to add a financial and reputational harm standard.  Under the revised policy, the Board may recover incentive compensation awarded to employees in the event of misconduct or failure of oversight that results in significant financial and reputational harm, among other enhancements.

2.     The Board exercised negative discretion to eliminate payments under the 2017 Annual Incentive Plan for certain members of the senior leadership team, with a total value of approximately $2.8 million.

3.     The Compensation Committee approved a cybersecurity metric as part of the 2018 and 2019 Annual Incentive Plans, which are applicable to all bonus-eligible employees including the Chief Executive Officer ("CEO"), Chief Technology Officer ("CTO"), and CISO.  Achievement of this cybersecurity metric cannot increase compensation, but failure to meet it will decrease any award.

## 2. Enhancements of Board Governance and Oversight Related to Data Security

1. The Technology Committee Charter was revised to:

   (a) Clarify that the Committee will meet at least quarterly;

   (b) Add responsibilities and structure related to cybersecurity and technology related risk management;

   (c) State that all members must be independent;

   (d) Meet quarterly with the CISO and CTO in executive session to discuss information technology and cybersecurity risks, programs, activities, opportunities and developments;

   (e) Authorize engagement of outside advisors to periodically review and assess the Company's cybersecurity program and otherwise support the work of the Committee; and

   (f) Review the Company's escalation protocols with respect to prompt reporting of cybersecurity incidents to management, the Committee, and the Board.

2. The Technology Committee Charter and the Audit Committee Charter were revised to provide that the Committees coordinate to oversee risk management with respect to cybersecurity and hold joint meetings of the Audit Committee and Technology Committee as appropriate. Joint meetings are held quarterly.

(a)    The Head of Internal Audit attends quarterly meetings of the Technology Committee and the Joint Audit and Technology Committees, and special meetings of such Committees, as deemed appropriate by the Committee Chairs.

(b)    The Company's outside auditor attends all joint meetings of the Audit and Technology Committees.

3.    The Company developed a cyber audit framework for the Board to more effectively assess and address cybersecurity issues.

4.    Cybersecurity was added to the skills the Governance Committee should consider in its assessment of the Board membership criteria.

5.    Cybersecurity has been added as part of the agenda for the Board's annual strategy review.

6.    The Company achieved the 2018 goals for cybersecurity program improvements that correspond to the cybersecurity performance metric under the 2018 Annual Incentive Plan.

7.    The Company enhanced its training program for all employees, in particular in the areas of security and compliance.

8.    A third-party assessment of the Company's security program was conducted for 2018 with reference to goals the Company established by reference to the National Institute of Standards and Technology ("NIST") security framework,

which consists of voluntary standards, guidelines, and best practices to manage security-related risks.

9.      The Company has increased the number of individuals in its security organization.

10.     In 2018, the Company began a multi-year technology transformation plan that represents the largest investment program in Equifax history with a focus on rebuilding technology infrastructure, accelerating migration to a public cloud environment, employing virtual private cloud deployment techniques, and rebuilding the Company's application portfolio using cloud-focused services. Equifax:

>   (a)   Refreshed over half of the technology leadership team to include top talent from market-leading technology organizations;

>   (b)   Hired approximately 1,000 new technology department employees, many of whom have experience with cloud technology; and

>   (c)   Initiated a cloud and data migration of the Company's data and systems.

### 3.   Enhancements to Enterprise Risk Management Review and Monitoring as Related to Data Security

1.      The Company has implemented a new Enterprise Risk Management ("ERM") framework based on a three lines of defense model—the business units

and corporate support units, the Risk Office and Enterprise Compliance Office, and the Internal Audit Department—designed to establish effective checks and balances:

> (a)    The enhanced ERM program will include risk data aggregation and reporting, creating unified risk and issue capture, analysis, and reporting.

2.    The Company established a new Risk Office, with a direct line of communication to the Board, to enhance and coordinate the second line of defense under the Company's updated ERM framework.

3.    The Company created an ERM team within the Risk Office to develop, enhance, deploy, and manage risk program elements.

4.    The Company has established a consistent process for reporting on program enhancements with respect to the Risk, Compliance, and Internal Audit.

### 4.    Enhancements to Crisis Management Plan and Preparedness

1.    The full Board participates in annual tabletop crisis simulation exercises with the senior leadership team.

2.    Following the Data Breach, the Company implemented enhanced Board-level engagement with respect to crisis management planning, including in connection with its new director orientation program.

> (a)    A dedicated crisis management session has been incorporated into the new director orientation schedule.

5.    **Escalation and Reporting to the Board on Data Security Incidents**

1.    The Company enhanced its risk escalation processes to support rapid escalation and internal notification of cybersecurity incidents.

(a)    The CEO, Chief Financial Officer ("CFO"), Chief Legal Officer ("CLO"), and Corporate Controller (collectively, with the CISO, the "Security Incident Notification Group") receive immediate notice from the Security Department of any potential security incident involving unauthorized access to Equifax's systems of data. In addition, the Security Incident Notification Group (aside from the CEO) meets on a monthly basis with the CISO to review a summary of all incidents (prepared by Internal Audit).   These reports are provided to the Technology Committee Chairman monthly.

(b)    The Security Incident Notification Group receives immediate notice from the Security Department of any potential security incident. Depending on the nature, severity, and potential impact of any individual reported incident, the Security Incident Notification Group will take appropriate action, which may include immediate escalation in the form of notice to the Technology Committee and Audit Committee Chairs and the Chairman of the Board.

(c)     The Company updated its practices in 2018 to reflect that the following incidents require immediate escalation to the Technology and Audit Committee Chairs and the Chairman of the Board: (i) unauthorized administrative or privileged access to Equifax systems; (ii) cyber breach in which Equifax systems are compromised and/or data is exfiltrated; (iii) the disclosure, loss or corruption of critical data (5,000 or more records), whether accidental or malicious; (iv) a material violation of state, federal, or international law; (v) an incident that triggers broad notice to consumers (defined as notice to 5,000 or more consumers); or (vi) an incident that triggers notice to regulatory or governmental agencies.

6.     **Enhancements to Trading Policies and Practices**

1.     The Company reviewed its trading policies and procedures based on the Data Breach and made certain enhancements.

(a)     The Company broadened the group of employees subject to trading preclearance to include employees below the Senior Leadership Team level.

(b)     In April 2018, Equifax launched new required employee training on the Company's Insider Trading Policy.

9

2.      The CFO, CLO, and Corporate Controller receive immediate notice of any potential security incident.  This same group is responsible for evaluating pre-clearance requests under the Insider Trading Policy, ensuring consistency with respect to requests for preclearance and consideration of any special trading restrictions necessary or appropriate in view of a potential cybersecurity incident.

## II.     ADDITIONAL CORPORATE GOVERNANCE REFORMS

Equifax shall implement within one hundred and twenty (120) days of entry of the Final Judgment and maintain for a minimum period of three (3) years from the date of execution of the Agreement, the corporate governance enhancements detailed below.  The Board acknowledges that the Consolidated Action was a material factor in the Board's decision to implement or maintain these corporate governance enhancements.

### A.      Further Enhancements of Board Governance and Oversight Related to Data Security

1.      The Audit Committee and the Technology Committee shall be authorized to retain their own IT, data and security experts and consultants as they deem necessary.

2.      The Technology Committee shall receive periodic reports from the Chief Technology Officer regarding the Company's IT budget, including cybersecurity expense.

10

3.    The CISO shall, as necessary and appropriate, provide relevant updates and written summaries to the Audit and Technology Committees and relevant members of the Senior Leadership Team on significant cybersecurity-related issues which may include, by way of example, significant remediation measures and incident investigations.

(a)    The minutes of the Audit Committee and Technology Committee meetings shall reflect that such updates were presented, and the Office of Corporate Secretary shall maintain related written materials that were provided in connection with such meetings.

(b)    The Office of Corporate Secretary shall maintain, for a period of at least four (4) years, copies of (i) presentations made to the Technology Committee, the Audit Committee, and the Board; and (ii) Board cybersecurity training materials.

(c)    The Audit Committee shall have the authority to direct steps to implement or maintain effective internal controls.

4.    Cybersecurity Review of Acquisitions: Equifax shall implement the following practices when conducting a review of a candidate for acquisition:

(a)    Equifax shall ensure that new business entities are only acquired after cybersecurity due diligence.  Where such due diligence is not practicable prior to the acquisition of a new business for reasons beyond

11

Equifax's control, or due to any applicable law, rule, or regulation, Equifax shall conduct the above-described cybersecurity due diligence as promptly as practical subsequent to the acquisition and report to the CISO any issues, or inadequate internal controls.

(b)     Equifax shall: (i) take reasonable steps to ensure that the Company's cybersecurity policies and procedures apply as quickly as is practicable to newly-acquired businesses; and (ii) train employees on Equifax's policies and procedures within a reasonable time after acquisition.

## B.     Insider Trading Policy and Procedures

1.     The Company will require pre-approval by the CLO, CFO and Corporate Controller of all proposed transactions in Equifax securities by Section 16 reporting persons that are not executed pursuant to a valid SEC Rule 10b5-1 trading plan.

## C.     Enhancements to Equifax's Integrity Line

1.     The Audit Committee shall receive a report on a quarterly basis with regard to calls or emails received through the Equifax Integrity Line or by e-mail to the Corporate Ethics Officer (codeofconduct.office@equifax.com) summarizing the number, type, and status (including conclusions) of complaints received.

2.     The CLO or other appropriate person shall make timely, pre-investigation reports to either the Chairman of the Audit Committee or the Chairman of the Board, as appropriate, of any whistleblower allegations involving alleged material risks, i.e., actions or omissions that, if proven, likely would result in a material compromise of personally identifiable information, a regulatory inquiry, criminal investigation, or material loss to the Company.

3.     The Company will provide the phone number and email address for the Integrity Line using written materials posted in prominent areas within Company facilities and/or through a link to such information directly from the landing page of its employee intranet.  Information regarding the Integrity Line and how to use it will also be included in the Code of Conduct that employees are required to review and certify annually.

### D.     The Demand Review Committee

1.     The Company's Board of Directors formed a Demand Review Committee (the "DRC") consisting entirely of outside directors to review and investigate the allegations in the Demand Letters.  The DRC retained its own independent counsel to assist with this work.  Plaintiffs, through their counsel, met and communicated with the DRC and provided their views as to the claims at issue and the information they believed to be relevant, and Plaintiffs' input was considered

by the DRC.  Equifax agrees that the DRC investigation was valuable and beneficial to the Company.

2.      After conducting an extensive review of the allegations and the proposed Settlement of this Action, the DRC approved the terms as being in the best interest of Equifax.

# EXHIBIT A

To Stipulation of Settlement and Release Agreement

([PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC. DERIVATIVE LITIGATION | Civil Action No.: 1:18-CV-00317-TWT |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT

WHEREAS, a consolidated derivative action is pending before this Court styled *In re Equifax, Inc. Derivative Litigation*, No. 18-CV-00317-TWT (the "Consolidated Action");

WHEREAS, Plaintiffs have made an application, pursuant to Federal Rule of Civil Procedure 23.1(c), for an order: (i) preliminarily approving the proposed settlement (the "Settlement") of the Consolidated Action in accordance with the Stipulation of Settlement and Release Agreement dated February 12, 2020 (the "Agreement"), which, together with the exhibits annexed thereto, sets forth the terms and conditions for the proposed Settlement and dismissal of the Consolidated Action with prejudice; and (ii) approving the form and manner of the dissemination of the Summary Notice and Notice to Current Equifax Stockholders, attached as Exhibits B and C, respectively, to the Agreement; and (iii) scheduling a date for the

Settlement Hearing (defined below), pursuant to Federal Rule of Civil Procedure 23.1, for the Court to consider and determine whether to approve the terms of the Settlement as fair, reasonable, and adequate, including the payment of attorneys' fees and expenses in the amount separately negotiated by the Parties and proposed by the mediator, and Service Awards to each of the Lead Plaintiffs;

WHEREAS this Court has considered the Agreement and the exhibits attached thereto and the arguments of the Parties; and

WHEREAS all capitalized terms contained herein shall have the same meanings as set forth in the Agreement (in addition to those capitalized terms defined herein);

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      This Court has jurisdiction over the subject matter of the Consolidated Action, and the Parties to the Agreement agreed to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

2.      The Court does hereby preliminarily approve the Agreement and the Settlement set forth therein, subject to further consideration at the Settlement Hearing (defined below).

- 2 -

3.      A hearing (the "Settlement Hearing") shall be held before this Court on

_____, 2020, at _____ __.m. [a date that is at least 40 calendar days

from the date of entry of this Preliminary Approval Order] at the United States

District Court for the Northern District of Georgia, Richard B. Russell Federal

Building and United States Courthouse, 75 Ted Turner Drive SW, Courtroom 2108,

Atlanta, GA 30303-3309, to (i) determine whether the Settlement of the

Consolidated Action on the terms and conditions provided for in the Agreement is

fair, reasonable, and adequate and in the best interests of Equifax and its

stockholders; (ii) hear and rule on any objections by Current Equifax Stockholders

to the proposed Settlement, the proposed Order and Final Judgment, the proposed

Fee and Expense Award and the proposed Service Awards; (iii) determine whether

to approve the Fee and Expense Award and Service Awards; and (iv) determine

whether the Court should enter the Order and Final Judgment, attached as Exhibit D

to the Agreement, which would dismiss with prejudice the Consolidated Action and

release the Released Claims.

4.      The Court reserves the right to adjourn the date of the Settlement

Hearing or modify any other dates set forth herein without further notice to Current

Equifax Stockholders, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

5.    Within ten (10) business days after the entry of this Order, Equifax shall cause a notice of the Settlement Hearing, in substantially the form attached as Exhibit C to the Agreement (the "Notice") to be posted on the investor relations section of its website at https://investor.equifax.com.  Lead Counsel shall cause the Notice to be posted on the firm's website at www.weisslawllp.com.  Additionally, within ten (10) business days after the entry of this Order, Equifax shall cause a Summary Notice, in substantially the form attached as Exhibit B to the Agreement, to be published once in *Investor's Business Daily*.  Other than Lead Counsel's posting of the Notice on the firm's website, all costs incurred in posting and publishing the Notice in the form and manner ordered by the Court shall be paid by Equifax.

6.    The form and method of notice provided in the preceding paragraph is the best notice practicable, constitutes due and sufficient notice of the Settlement Hearing to all persons entitled to receive such a notice, and meets the requirements of Federal Rule of Civil Procedure 23.1, the United States Constitution, and other applicable law.

- 4 -

7.     At least twenty-eight (28) calendar days prior to the Settlement Hearing, Defendants' counsel shall serve on Lead Counsel and file with the Court proof, by affidavit or declaration, of posting and publication of the Notices.

8.     At least twenty-eight (28) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of posting of the Notice.

9.     All papers in support of the Settlement, the Fee and Expense Award, and the Service Awards shall be filed with the Court and served at least twenty-one (21) calendar days prior to the Settlement Hearing.  The Parties shall file with the Court and serve responses to any objections filed pursuant to ¶ 10 below at least five (5) calendar days prior to the Settlement Hearing.

10.    Any Current Equifax Stockholder may object to the Settlement of the Consolidated Action, the proposed Order and Final Judgment, the proposed Fee and Expense Award, and/or the Service Awards, and may also (but need not) appear in person or by his, her, or its attorney at the Settlement Hearing; provided, however, that no Current Equifax Shareholder or any other person or entity shall be heard or entitled to contest such matters unless that person has fully complied with the terms set out herein.  To object, such stockholders must submit copies of: (a) a written

- 5 -

statement identifying such person's or entity's name, address, and telephone number, and, if represented by counsel, the name, address, and telephone number of counsel; (b) proof of continuous ownership of Equifax common stock from at least September 7, 2017 to the date of the Settlement Hearing, including the number of shares of Equifax common stock and the date or dates of purchase; (c) a written statement explaining the person's or entity's objection and the reasons for such objection; and (d) any documentation in support of such objection. Any objection should not exceed twenty-five (25) pages in length. If the stockholder wishes to appear at the Settlement Hearing, he, she, or it must also include a statement of intention to appear at the Settlement Hearing. Such materials must be filed with the Clerk of the United States District Court for the Northern District of Georgia - Atlanta Division and sent by first class mail to the following addresses and postmarked at least fourteen (14) calendar days before the Settlement Hearing:

> WEISSLAW LLP
> Joseph H. Weiss
> 1500 Broadway, 16th Floor
> New York, New York 10036
>
> *Counsel for Lead Plaintiffs Nancy A.K. and John Weyl and Lead Derivative Counsel*
>
> KING & SPALDING LLP
> Michael R. Smith
> B. Warren Pope

- 6 -

1180 Peachtree Street N.E.
Atlanta, GA  30309

-and-

WILMER CUTLER PICKERING HALE AND DORR LLP
Timothy J. Perla
60 State Street
Boston, Massachusetts 02109

-and-

TROUTMAN SANDERS LLP
David M. Chaiken
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216

-and-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven G. Madison
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Michael Liftik
1300 I Street NW, Suite 900
Washington, DC 20005

*Counsel for Defendants*

Any person or entity who fails to object in the manner described above shall

be: (i) deemed to have waived any objection and shall forever be foreclosed from

making any objection to the fairness, reasonableness, or adequacy of the Settlement,

Order and Final Judgment, the Fee and Expense Award, and the Service Awards;

- 7 -

(ii) barred from raising such objection in this Consolidated Action or any other action or proceeding related thereto; and (iii) bound by the Order and Final Judgment and the releases of claims therein.  A Current Equifax Stockholder objecting or otherwise requesting to be heard at the Settlement Hearing shall be deemed to have submitted to the jurisdiction of the Court with respect to the objection or request to be heard and the subject matter of the Settlement, including, but not limited to, enforcement of the terms of the Settlement (including the release of the Released Claims provided for in the Agreement and Order and Final Judgment).

11.    Pending final determination of whether the Settlement should be approved, all proceedings in the Consolidated Action and all further activity between the Parties regarding or directed toward the Consolidated Action, save for those activities and proceedings relating to the Agreement and the Settlement, shall be stayed.

12.    Pending the Effective Date of the Agreement or the termination of the Agreement according to its terms, Lead Plaintiffs and/or any Equifax stockholder derivatively on behalf of Equifax are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or

prosecution of any action asserting any Released Claims against any Released Persons.

13.    The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Current Equifax Stockholders.

14.    All Current Equifax Stockholders shall be bound by all orders, determinations, and judgments in the Consolidated Action concerning the Settlement, whether favorable or unfavorable to Equifax's stockholders.

15.    The provisions contained in the Agreement (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Consolidated Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Consolidated Action or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Persons may file the Agreement and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense or

- 9 -

counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

16.     In the event that the Agreement or Settlement is not approved by the Court, or the Settlement is terminated for any reason, the Parties shall be restored to their respective positions in the Consolidated Action as of the last date before the Agreement, and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Consolidated Action or in any other action or proceeding.  In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Consolidated Action or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.

17.     In the event the Judgment fails to become final, then it shall be the obligation of Lead Counsel to make appropriate refunds or repayments to Equifax

or its designees of any attorneys' fees and expenses previously paid within ten (10) business days from receiving notice from Equifax's counsel or from a court of appropriate jurisdiction.

IT IS SO ORDERED.

DATED: _____        _____
                                 The Honorable Thomas W. Thrash, Jr.
                                 Chief United States District Judge

# EXHIBIT B

To Stipulation of Settlement and Release Agreement

(SUMMARY NOTICE)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC.<br>DERIVATIVE LITIGATION | Civil Action<br>No.: 1:18-CV-00317-TWT |

**TO:   ALL CURRENT RECORD HOLDERS AND BENEFICIAL OWNERS
OF COMMON STOCK OF EQUIFAX, INC. ("EQUIFAX" OR THE
"COMPANY") WHO CONTINUOUSLY HELD FROM AT LEAST
SEPTEMBER 7, 2017 TO APRIL _, 2020**

**PLEASE READ THIS SUMMARY NOTICE CAREFULLY AND IN
ITS ENTIRETY AS YOUR RIGHTS MAY BE AFFECTED BY
PROCEEDINGS IN THE LITIGATION.**

**YOU ARE HEREBY NOTIFIED** that the above-captioned consolidated
shareholder derivative action (the "Consolidated Action"), is being settled on the
terms set forth in the Stipulation of Settlement and Release Agreement dated
February 12, 2020 (the "Agreement" or "Settlement").  This Summary Notice is
provided by order of the United States District Court for the Northern District of
Georgia (the "Court").

The Consolidated Action alleges claims derivatively on behalf of Equifax
against the Individual Defendants[1] for breach of fiduciary duties, unjust enrichment,
waste, insider trading, and violations of the federal securities laws.  Pursuant to the
terms of the Settlement set forth in the Agreement, the Defendants agree to cause
their insurers to pay to Equifax the sum of thirty-two million five hundred thousand
dollars ($32,500,000).  Further, Equifax agrees to adopt and/or maintain certain
corporate governance and internal control reforms.  Certain of the corporate
governance and internal control reforms, as outlined in the Agreement, shall be
maintained for at least three (3) years from the date of execution of the Agreement,

---

[1] Unless otherwise defined, all capitalized terms used herein shall have the meanings
set forth in the Agreement.

unless altered in accordance with the mechanisms provided in the Agreement. Equifax also agrees to cause an award of attorneys' fees and expenses to be paid to Lead Counsel in the total amount of $10,750,000 (the "Fee and Expense Award"), subject to approval of the Court. Lead Counsel agrees to pay or cause to be paid, from the Fee and Expense Award, a Service Award in an amount not to exceed $2,500 to each of the Lead Plaintiffs, subject to approval of the Court. The Individual Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing asserted in the Consolidated Action. This Summary Notice should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Agreement.[2]

On _____, 2020, at _____ __.m., a hearing (the "Settlement Hearing") will be held at the United States District Court for the Northern District of Georgia, 75 Ted Turner Dr. SW, Courtroom 2108, Atlanta, GA 30303-3309 to determine whether the proposed Settlement on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate, including the Fee and Expense Award and Service Awards, and should be approved; hear and rule on any objections by Current Equifax Stockholders thereto; and determine whether the Order and Final Judgment should be entered.

This Summary Notice provides a condensed overview of certain provisions of the Agreement and the full Notice of Proposed Settlement (the "Notice"). It is not a complete statement of the events of the Consolidated Action or the terms set forth in the Agreement. For additional information about the claims asserted in the Consolidated Action and the terms of the proposed Settlement, you may inspect the Agreement and other papers filed in the Consolidated Action at the U.S. District Court Clerk's office at any time during regular business hours. In addition, copies of the Agreement and the Notice are available on the investor relations section of the Company's website at https://investor.equifax.com. Inquiries regarding the proposed Settlement also may be made to counsel for the Plaintiffs and Lead Derivative Counsel: Joseph H. Weiss, WeissLaw LLP, 1500 Broadway, 16th Floor, New York, NY 10036, (212) 682-3025.

You may enter an appearance before the Court, at your own expense, individually or through counsel of your choice. If you want to object at the

---

[2] A copy of the Agreement has been filed with the Court and may also be viewed at https://investor.equifax.com or www.weisslawllp.com.

Settlement Hearing, you must be a Current Equifax Stockholder and you must first comply with the procedures for objecting, which are set forth in the Agreement and its accompanying exhibits, including the Notice. **Any objection to any aspect of the Settlement must be filed with the Clerk of the Court no later than [          ] [a date fourteen calendar days before the Settlement Hearing]**, in accordance with the procedures set forth in the Agreement and the Notice.  Any objection may not exceed twenty-five (25) pages in length.  Any Current Equifax Stockholder who does not object in accordance with such procedures will be bound by the Order and Final Judgment of the Court granting final approval to the Settlement, and shall be deemed to have waived the right to object (including the right to appeal) and forever shall be barred, in this proceeding or in any other proceeding, from raising such objection.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS SUMMARY NOTICE.**

# EXHIBIT C

To Stipulation of Settlement and Release Agreement

(NOTICE OF PROPOSED SETTLEMENT)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE EQUIFAX, INC.<br>DERIVATIVE LITIGATION | Civil Action<br>No.: 1:18-CV-00317-TWT |

## <u>NOTICE OF PROPOSED SETTLEMENT</u>

**TO:  ALL CURRENT RECORD HOLDERS AND BENEFICIAL OWNERS OF COMMON STOCK OF EQUIFAX, INC. ("EQUIFAX" OR THE "COMPANY") WHO CONTINUOUSLY HELD FROM AT LEAST SEPTEMBER 7, 2017 TO APRIL __, 2020 (EXCLUDING DEFENDANTS) AND THEIR SUCCESSORS-IN-INTEREST.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.   THIS NOTICE RELATES TO A PROPOSED SETTLEMENT AND DISMISSAL OF SHAREHOLDER DERIVATIVE LITIGATION AND CONTAINS IMPORTANT INFORMATION REGARDING YOUR RIGHTS.   YOUR RIGHTS MAY BE AFFECTED BY LEGAL PROCEEDINGS IN THIS ACTION.**

**PLEASE NOTE THAT THIS ACTION IS NOT A "CLASS ACTION" AND NO INDIVIDUAL SHAREHOLDER HAS THE RIGHT TO BE COMPENSATED AS A RESULT OF THE SETTLEMENT OF THIS ACTION.**

YOU ARE HEREBY NOTIFIED, pursuant to an order of the United States District Court for the Northern District of Georgia (the "Court") that a proposed Settlement[1] has been reached between and among the parties to a consolidated shareholder derivative action styled *In re Equifax, Inc. Derivative Litigation*, No. 18-CV-00317-TWT (the "Consolidated Action").  This Notice is not an expression of any opinion by the Court with respect to the truth of the allegations in the Consolidated Action or the merits of the claims or defenses asserted by or against any party.  It is solely to notify you of the terms of the proposed Settlement, and your rights related thereto. The terms of the proposed Settlement are set forth in a Stipulation of Settlement and Release Agreement dated February 12, 2020 (the "Agreement" or "Settlement"). This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Agreement, which has been filed with the Court and is attached hereto.

## I.      WHY THE COURT HAS ISSUED THIS NOTICE

Your rights may be affected by the Settlement of the Consolidated Action.  The parties to the Consolidated Action have agreed upon terms to settle those matters and have signed the Agreement setting forth the Settlement terms.

---

[1] All capitalized terms herein have the same meanings as set forth in the Agreement.

## II.   SUMMARY OF THE SHAREHOLDER MATTERS SUBJECT TO THE SETTLEMENT

On September 7, 2017, Equifax announced the Data Breach that is the subject of this litigation.  Between September 11, 2017 and May 15, 2018, the Equifax Board received multiple shareholder demands made pursuant to O.C.G.A. § 14-2-742 in connection with the Data Breach, including a demand from Lead Plaintiffs (collectively the "Demand Letters").  The Demand Letters asserted that officers, directors, and/or employees of Equifax had engaged in wrongdoing in connection with the Data Breach, including but not limited to breach of fiduciary duties, mismanagement, waste, insider trading, and violations of the federal securities laws. The Demand Letters demanded that the Equifax Board investigate and take appropriate action including initiating litigation.

On October 18, 2017, the Equifax Board created the Demand Review Committee (the "DRC"), and empowered it to act on the Company's behalf in connection with matters relating to the Demand Letters.   The DRC (which is composed of independent Directors Elane Stock and Scott McGregor) initiated an extensive process, including meeting on over 25 occasions, meeting with Lead Counsel, gaining a detailed understanding of the relevant facts, law, and allegations, appearing via counsel for court conferences, participating in extensive settlement negotiations, and undertaking other tasks in order to discharge its duties.

Between January 22, 2018 and March 22, 2018, numerous stockholders, including Lead Plaintiffs, filed derivative complaints naming Equifax as a nominal defendant and various Equifax officers and directors as defendants.   The actions were consolidated by the Court into the Consolidated Action.

On April 4, 2018, after extensive briefing and oral argument, the Court appointed Nancy A.K. Weyl and John Weyl as Lead Plaintiffs and WeissLaw LLP as Lead Counsel for the Consolidated Action.

On July 12, 2018, Lead Plaintiffs filed a Consolidated Complaint alleging claims derivatively on behalf of Equifax against the Individual Defendants for breach of fiduciary duties, unjust enrichment, waste, insider trading, and violations of the federal securities laws (the "Consolidated Complaint").   Lead Plaintiffs sought, among other things, monetary damages and the implementation of corporate governance and internal control reforms to prevent, or at least to mitigate the risk of, recurrence of the Data Breach.

On July 19, 2018, the Court entered a stipulated order ordering that: (1) the Consolidated Complaint shall serve as the sole operative demand, superseding all prior Demand Letters made pursuant to O.C.G.A. § 14-2-742 in connection with the Data Breach; and (2) Defendants need not answer or respond to the Consolidated Complaint until further order by the Court.

Lead Plaintiffs subsequently commenced an extensive investigation into the causes of the Data Breach, Equifax's internal control systems relevant to prevention of future data breaches, the Company's corporate governance practices and procedures, and the laws, rules and regulations relevant to the claims pled in the Consolidated Complaint. After entering into a confidentiality agreement, Equifax produced over three hundred thousand pages of documents to Lead Plaintiffs regarding the circumstances and events at issue in the Consolidated Complaint. Lead Counsel established a team of attorneys that would be almost exclusively dedicated to reviewing and analyzing the documents produced for a period of several months.

In order to advise them regarding the cybersecurity issues involved in the Consolidated Action, Lead Plaintiffs retained Robert (Bob) E. Anderson, Jr., who is the Chief Executive Officer of Cyber Defense Labs. Mr. Anderson previously served as a Principal of the Chertoff Group and as the Executive Assistant Director of the FBI's Criminal, Cyber, Response and Services Branch. In that position, he oversaw all FBI criminal and cyber investigations worldwide, international operations, critical incident response, and victim assistance. Lead Counsel provided Mr. Anderson and his associates, upon their executing an undertaking as required by the confidentiality agreement, the relevant documents produced, as well other publicly available information regarding the circumstances and events at issue.

Lead Plaintiffs also retained Professor Lawrence Hamermesh in order to advise them regarding the Company's corporate governance practices and procedures, and best practices in relation to corporate governance. Professor Hamermesh is the Emeritus Professor and the former Ruby R. Vale Professor of Corporate and Business Law at Widener University, Delaware School of Law, and the former Director of the Widener Institute of Delaware Corporate and Business Law.

On April 29, 2019, Lead Counsel, together with their cybersecurity expert, Mr. Anderson, met at the Company's Atlanta headquarters with Equifax's Chief Information Security Officer (the "CISO"), the Company's outside and internal counsel, and the DRC's counsel. At the meeting, factors related to the Data Breach were discussed, as well as Equifax's subsequent remediation steps and further steps which Lead Plaintiffs and their expert proposed to be taken.

Lead Counsel also conducted a telephonic conference with the DRC and its counsel to discuss the Consolidated Action, the circumstances and events relating to the Data Breach, and Lead Plaintiffs' views regarding the measures that the Company needed to undertake to remediate alleged internal control weaknesses that they believed led to the Data Breach. On May 1, 2019, in order to continue the dialogue initiated in the telephonic conference, Lead Counsel conducted an in-person meeting with the DRC and its counsel in St. Louis, Missouri. At the in-person meeting, there was an exchange of views regarding the strengths and weaknesses of the case, and how Equifax could best remediate those matters that Lead Plaintiffs had identified as constituting alleged internal control and corporate governance weaknesses.

Commencing in or about May 2019, counsel for Defendants began discussions with Lead Counsel, assisted by a professional mediator, retired Judge Hon. Layn Phillips, regarding a possible resolution of the Consolidated Action. Thereafter, counsel for all parties reached an agreement to resolve those matters on the terms set forth in the Agreement. Among other efforts, the Parties on May 29, 2019 participated in an in-person, full-day mediation conducted by Judge Phillips at his offices in Newport Beach, California. Although the Parties engaged in substantial dialogue, they did not reach a settlement at that time.

Over the following months, with substantial additional assistance from Judge Phillips and his staff, the Parties continued to engage in substantive dialogue concerning settlement, exchanging numerous proposals but not reaching agreement. In December 2019, Judge Phillips continued to engage substantively with the Parties, eventually leading to a mediator's proposal. On December 13, 2019, the mediator's proposal was conveyed to Lead Counsel and the DRC's counsel. On December 17, 2019, both Lead Counsel and the DRC's counsel conveyed their acceptance of the mediator's proposal and an agreement in principle to settle this matter on the terms set forth in the Agreement was reached.

## III.   TERMS OF THE PROPOSED SETTLEMENT

The principal terms, conditions, and other matters that are part of the Settlement are subject to approval by the Court and a number of other conditions. This summary should be read in conjunction with, and is qualified in its entirety by reference to, the text of the Agreement, which has been filed with the Court and may be viewed at https://investor.equifax.com or www.weisslawllp.com. As set forth therein, the terms of the Settlement include: (1) the Defendants' agreement to cause their insurers to pay to Equifax the sum of thirty-two million five hundred thousand dollars ($32,500,000); and (2) Equifax's adoption and/or maintenance of the corporate governance and internal control reforms listed in Appendix A of the

Agreement.  Certain of the corporate governance and internal control reforms, as outlined in the Agreement, shall be maintained for at least three (3) years from the date of execution of the Agreement, unless altered in accordance with the mechanisms provided in the Agreement.  Below is a summary of the corporate governance reforms listed in Appendix A of the Agreement.

1.     The Company's compensation clawback policy was revised to add a financial and reputational harm standard.

2.     The Board exercised negative discretion to eliminate payments under the 2017 Annual Incentive Plan for certain members of the senior leadership team, with a total value of approximately $2.8 million.

3.     The Compensation Committee approved a cybersecurity metric as part of the 2018 and 2019 Annual Incentive Plans.  Achievement of this metric cannot increase compensation, but failure to meet it will decrease any award.

4.     The Technology Committee Charter was revised to add responsibilities related to cybersecurity and technology related risk management, state that all members must be independent, provide for executive sessions with relevant corporate officers, authorize engagement of outside advisors, and review escalation protocols with respect to reporting of cybersecurity incidents to management, the Committee, and the Board.

5.     The Technology Committee Charter and Audit Committee Charter were revised to provide that the Committees coordinate to oversee risk management with respect to cybersecurity and hold joint meetings as appropriate.

6.     Cybersecurity was added to the skills the Governance Committee should consider in its assessment of the Board membership criteria.

7.     The Company enhanced its training program for all employees, in particular in the areas of security and compliance.  The Company has increased the number of individuals in its security organization.

8.     The Company has implemented a new Enterprise Risk Management ("ERM") framework.  The Company established a new Risk Office, with a direct line of communication to the Board, to enhance and coordinate the second line of defense under the Company's updated ERM framework.  The Company created an ERM team within the Risk Office.

9.    The Company enhanced its risk escalation processes to support rapid escalation and internal notification of cybersecurity incidents.

10.    The Company reviewed its trading policies and procedures based on the Data Breach and made certain enhancements.  Designated officers will receive immediate notice of any potential security incident and will be responsible for evaluating pre-clearance requests under the Insider Trading Policy, ensuring consistency with respect to requests for preclearance and consideration of any special trading restrictions necessary or appropriate in view of a potential cybersecurity incident.

11.    The CISO shall, as necessary and appropriate, provide relevant updates and written summaries to the Audit and Technology Committees and relevant members of the Senior Leadership Team on significant cybersecurity-related issues. The minutes of the Audit Committee and Technology Committee meetings shall reflect that such updates were presented, and the Office of Corporate Secretary shall maintain related written materials that were provided in connection with such meetings.  The Audit Committee shall have the authority to direct steps to implement or maintain effective internal controls.

12.    Equifax shall ensure that new business entities are only acquired after cybersecurity due diligence.  Where such due diligence is not practicable prior to the acquisition of a new business for reasons beyond Equifax's control, or due to any applicable law, rule, or regulation, Equifax shall conduct the cybersecurity due diligence as promptly as practical subsequent to the acquisition and report to the CISO any issues, or inadequate internal controls.

13.    The Company will require pre-approval of all proposed transactions in Equifax securities by Section 16 reporting persons that are not executed pursuant to a valid SEC Rule 10b5-1 trading plan.

14.    The Audit Committee shall receive a report on a quarterly basis with regard to calls or emails received through the Equifax Integrity Line or by e-mail to the Corporate Ethics Officer.  The CLO or other appropriate person shall make timely, pre-investigation reports to either the Chairman of the Audit Committee or the Chairman of the Board, as appropriate, of any whistleblower allegations involving alleged material risks.  The Company will post the phone number and email address for the Integrity Line in prominent areas within Company facilities and/or through a link on its employee intranet.  Information regarding the Integrity Line will also be included in the Code of Conduct that employees are required to review and certify annually.

15.    The Company's Board of Directors formed the DRC consisting entirely of outside directors to review and investigate the allegations in the Demand Letters. The DRC retained its own independent counsel to assist with this work.  Plaintiffs, through their counsel, met and communicated with the DRC and provided their views as to the claims at issue and the information they believed to be relevant, and Plaintiffs' input was considered by the DRC.   Equifax agrees that the DRC investigation was valuable and beneficial to the Company.  After conducting an extensive review of the allegations and the proposed Settlement of this Action, the DRC approved the terms as being in the best interest of Equifax.

## IV.    DISMISSAL OF CONSOLIDATED ACTION AND RELEASE OF CLAIMS

The Agreement also provides for the entry of judgment dismissing the Consolidated Action on the merits with prejudice, the full release of any claims that have been, could have been, or in the future might be asserted by Lead Plaintiffs (both individually and derivatively on behalf of Equifax), and certain additional releases as detailed in the Agreement.

## V.    PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES AND LEAD PLAINTIFFS' SERVICE AWARDS

In recognition of the foregoing, and subject to Court approval, Equifax agreed to pay or cause to be paid the Fee and Expense Award in the amount of $10,750,000.  To date, Lead Counsel has not received any payments for their efforts on behalf of Equifax and its stockholders.   Any fee awarded by the Court is designed to compensate Lead Counsel for the results achieved on behalf of the Company in response to the Consolidated Action and the Demand Letters, and the costs associated with development, prosecution, and settlement of the Consolidated Action.  Lead Counsel shall pay or cause to be paid from the Fee and Expense Award, subject to Court approval, a Service Award in an amount not to exceed $2,500 to each of the Lead Plaintiffs for their participation in the Consolidated Action.   The Fee and Expense Award and Service Awards were separately negotiated with the help of the mediator and were the result of arm's-length negotiation between the Parties conducted after reaching agreement on the corporate governance and internal control reforms.

## VI.   REASONS FOR THE SETTLEMENT

The Parties have determined that it is desirable and beneficial that the Consolidated Action, and all of their disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement.

### A.   Why Did Lead Plaintiffs Agree to Settle?

Lead Plaintiffs believe that the claims asserted in the Consolidated Action on behalf of Equifax have merit.  Lead Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Consolidated Action.  Lead Plaintiffs and Lead Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.  In consideration of the mediation that led to the Settlement and after weighing the risks of continued litigation, as well as other factors, Lead Plaintiffs and Lead Counsel have determined that it is in the best interests of Equifax and its stockholders that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement, and that these terms and conditions are fair, reasonable, adequate and confer substantial benefits upon Equifax and its stockholders.

### B.   Why Did the Individual Defendants Agree to Settle?

The Individual Defendants have denied, and continue to deny, each and all of the allegations made by Lead Plaintiffs in the Consolidated Action and maintain furthermore that they have meritorious defenses.  The Individual Defendants also have denied and continue to deny, among other allegations, the allegations that Equifax or its stockholders have suffered damage or were harmed in any way by their conduct.  The Individual Defendants have further asserted and continue to assert that at all times they acted in good faith and in a manner they reasonably believed to be, and that was, in the best interests of Equifax and its stockholders.  Nonetheless, the Individual Defendants have concluded that further litigation could prove protracted and expensive and that it is desirable that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement.  The Individual Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Consolidated Action.  The Individual Defendants have, therefore, determined that it is desirable that the Consolidated Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Agreement.

### C.    The Company's Position on the Settlement

The Company, by and through the DRC, after conducting an extensive review of the allegations in the Consolidated Complaint and the proposed Settlement of this Consolidated Action, approved the terms of the Agreement as being in the best interest of Equifax.  In reaching this conclusion, the DRC has taken into account, among other things, the best interests of stockholders, the facts known to the DRC as a result of its investigation, the extensive dialogue and negotiations undertaken between the DRC and Lead Plaintiffs, the mediator's recommendation, the desire of Equifax for finality with respect to issues arising from the Data Breach, the benefits to Equifax of the Settlement, and the uncertainty and risks inherent in any litigation, especially in complex cases like the Consolidated Action.

## VII.  SETTLEMENT HEARING

On _____, 2020 at _____ __.m., a hearing (the "Settlement Hearing") will be held before the United States District Court for the Northern District of Georgia, 75 Ted Turner Dr. SW, Courtroom 2108, Atlanta, GA 30303-3309 to (i) determine whether the proposed Settlement of the Consolidated Action on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate and in the best interests of Equifax and its stockholders; (ii) hear and rule on any objections by Current Equifax Stockholders to the proposed Settlement, the proposed Order and Final Judgment, the proposed Fee and Expense Award and proposed Service Awards; (iii) determine whether to approve the Fee and Expense Award and Service Awards; and (iv) determine whether the Court should enter the Order and Final Judgment, attached as Exhibit D to the Agreement, which would dismiss with prejudice the Consolidated Action and release the Released Claims.  If the Settlement is approved, you will be subject to and bound by the provisions of the Agreement, the releases contained therein, and by all orders, determinations, and judgments, including the Order and Final Judgment, concerning the Settlement, whether favorable or unfavorable to you or Equifax.

Pending final determination of whether the Settlement should be approved, no Equifax stockholder, either directly, representatively, derivatively, or in any other capacity, shall commence or prosecute against any of the Released Persons, an action or proceeding in any court, administrative agency, or other tribunal asserting any of the Released Claims.

## VIII. RIGHT TO ATTEND FINAL HEARING

You may enter an appearance in the Consolidated Action, at your own expense, individually or through counsel of your choice. If you want to object at the Final Hearing, then you must be a Current Equifax Stockholder and comply with the procedures for objecting, which are set forth below. The Court has the right to change the hearing dates or times without further notice. Thus, if you are planning to attend the Final Hearing, you should confirm the date and time before going to the Court. If you have no objection to the Settlement, you do not need to appear at the Settlement Hearing or take any other action.

## IX. THE PROCEDURES FOR OBJECTING TO THE SETTLEMENT

Any Current Equifax Stockholder, as defined in the Agreement, may object to the Settlement of the Consolidated Action and the Demand Letters, the proposed Order and Final Judgment, and/or the proposed Fee and Expense Award, as well as the Service Awards, and may also (but need not) appear in person or by his, her, or its attorney at the Settlement Hearing. To object, such stockholders must submit copies of: (a) a written statement identifying such person's or entity's name, address, and telephone number, and, if represented by counsel, the name, address, and telephone number of counsel; (b) proof of continuous ownership of Equifax common stock from at least September 7, 2017 to the date of the Settlement Hearing, including the number of shares of Equifax common stock and the date or dates of purchase; (c) a written statement explaining the person's or entity's objection and the reasons for such objection; and (d) any documentation in support of such objection. Any objection should not exceed twenty-five (25) pages in length. If the stockholder wishes to appear at the Settlement Hearing, he, she, or it must also include a statement of intention to appear at the Settlement Hearing. Such materials must be filed with the Clerk of the United States District Court for the Northern District of Georgia and sent by first class mail to the following addresses and postmarked at least fourteen (14) calendar days before the Settlement Hearing:

> WEISSLAW LLP
> Joseph H. Weiss
> 1500 Broadway, 16th Floor
> New York, New York 10036
>
> *Counsel for Lead Plaintiffs Nancy A.K. and John Weyl and Lead Derivative Counsel*

KING & SPALDING LLP
Michael R. Smith
B. Warren Pope
1180 Peachtree Street N.E.
Atlanta, GA  30309

-and-

WILMER CUTLER PICKERING HALE AND DORR LLP
Timothy J. Perla
60 State Street
Boston, Massachusetts 02109

-and-

TROUTMAN SANDERS LLP
David M. Chaiken
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216

-and-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven G. Madison
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Michael Liftik
1300 I Street NW, Suite 900
Washington, DC 20005

*Counsel for Defendants*

Any person or entity who fails to object in the manner described above shall be: (i) deemed to have waived any objection and shall forever be foreclosed from making any objection to the Settlement, Order and Final Judgment, Fee and Expense Award, and Service Awards; (ii) barred from raising such objection in this Consolidated Action or any other action or proceeding; and (iii) bound by the Order and Final Judgment and the releases of claims therein.

- 12 -

Current Equifax Stockholders that have no objection to the Settlement, Order and Final Judgment, Fee and Expense Award, and/or Service Awards do not need to appear at the Settlement Hearing or take any other action.

## X.   HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice summarizes the Agreement.  It is not a complete statement of the events of the Consolidated Action, or the terms of the Settlement contained in the Agreement.

Inquiries about the Consolidated Action or the Settlement may be made to Lead Counsel: Joseph H. Weiss, WeissLaw LLP, 1500 Broadway, 16th Floor, New York, NY 10036, (212) 682-3025.

DATED: _____, 2020          BY ORDER OF THIS COURT
                                       UNITED STATES DISTRICT
                                       COURT
                                       NORTHERN DISTRICT OF
                                       GEORGIA


### DO NOT CONTACT THE CLERK OF THE COURT REGARDING THIS NOTICE

# EXHIBIT D

To Stipulation of Settlement and Release Agreement

([PROPOSED] ORDER AND FINAL JUDGMENT)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE EQUIFAX, INC. DERIVATIVE LITIGATION | Civil Action No.: 1:18-CV-00317-TWT |

## [PROPOSED] ORDER AND FINAL JUDGMENT

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement ("Preliminary Approval Order") of this Court dated _____, 2020, on the application of Lead Plaintiffs for approval of the settlement of this Consolidated Action as set forth in the Stipulation of Settlement and Release Agreement dated as of February 12, 2020, including all exhibits thereto ("Agreement" or "Settlement"). Due and adequate notice having been given by Equifax, Inc. ("Equifax" or the "Company") and Lead Plaintiffs to Current Equifax Stockholders as required in the Court's Preliminary Approval Order, and the Court having considered all papers filed and proceedings held herein and otherwise being fully informed, and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order and Final Judgment ("Judgment") incorporates herein the Agreement, including the exhibits thereto.  Unless otherwise defined herein, all capitalized terms used herein shall have the same meanings as set forth in the Agreement.

2.      This Court has jurisdiction over the subject matter of the Consolidated Action, and the Parties to the Agreement have consented to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

3.      The record shows that Notices have been given to all Current Equifax Stockholders in the manner approved by the Court in the Preliminary Approval Order.  The Court finds that such Notices: (i) constitute reasonable and the best notice practicable under the circumstances; (ii) constitute notice that was reasonably calculated, under the circumstances, to apprise all Current Equifax Stockholders who could reasonably be identified of the pendency of the Consolidated Action, of the terms of the Settlement, and of Current Equifax Stockholders' right to object to and to appear at the settlement fairness hearing held on _____, 2020 (the "Settlement Hearing"); (iii) constitute due, adequate, and sufficient notice

to all persons or entities entitled to receive notice in accordance with Rule 23.1(c) of the Federal Rules of Civil Procedure; and (iv) meet the requirements of due process.

4.      In light of the benefits to the Company and the complexity, expense and possible duration of further litigation, the Court hereby fully and finally approves the Settlement, pursuant to Rule 23.1(c), as set forth in the Agreement in all respects, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of Equifax and its stockholders.   This Court further finds the Settlement set forth in the Agreement was reached under the supervision of an experienced mediator and is the result of arm's-length negotiations between experienced counsel representing the interests of Lead Plaintiffs, Equifax, Equifax's stockholders, and the Individual Defendants.   The Court has considered any submitted objections to the Settlement and hereby overrules them.

5.      The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Agreement.   The Consolidated Action and all claims contained therein, as well as all of the Released Claims (including Unknown Claims), are dismissed on the merits and with prejudice.

6.     The Court finds that during the course of the litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and particularly with Rule 11(b) of the Federal Rules of Civil Procedure.

7.     Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, and discharged the Released Claims (including Unknown Claims) against the Released Persons.  Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Agreement.

8.     Upon the Effective Date, the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, and their Related Persons, Lead Counsel, and the Plaintiffs, as well as any other law firm that appeared for the Plaintiffs, in the Action from all claims (including Unknown Claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Consolidated Action or the Released Claims.  Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Agreement.

- 4 -

9.     The provisions contained in the Agreement (including any exhibits attached thereto) shall not be deemed a presumption, concession, or admission by any Party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Consolidated Action or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Consolidated Action or in any other action or proceeding, whether civil, criminal, or administrative, except in connection with any proceeding to enforce the terms of the Settlement. The Released Persons may file the Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.    The Parties are to bear their own costs, except as otherwise provided in the Agreement and in this Judgment.  The Court hereby approves the Fee and Expense Award provided in the Agreement.  The Court also approves a Service Award to each of the Lead Plaintiffs in the amount of $2,500, to be paid out of the Fee and Expense Award.

- 5 -

11.    Lead Plaintiffs and/or any Equifax stockholder derivatively on behalf of Equifax are permanently barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any Released Person.

12.    Without affecting the finality of this Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Agreement, the Settlement, and of this Judgment, to protect and effectuate this Judgment, including any proceedings to enjoin the Releasing Parties from instituting, commencing, or prosecuting the Released Claims against the Released Persons, and for any other necessary purpose.  Lead Plaintiffs, the Individual Defendants, and each Current Equifax Stockholder are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the Agreement, including the exhibits thereto, and only for such purposes.  Without limiting the generality of the foregoing, and without affecting the finality of this Judgment, the Court retains exclusive jurisdiction over any such suit, action, or proceeding.

13.    In the event that the Settlement does not become effective in accordance with the terms of the Agreement, this Judgment shall be vacated, and all orders entered and releases delivered in connection with the Agreement and this Judgment shall be null and void, except as otherwise provided for in the Agreement, and the Parties shall be returned to their respective positions immediately prior to the execution of the Agreement.

14.    Judgment shall be, and hereby is, entered dismissing the Consolidated Action with prejudice and on the merits.  The Court finds that this Order and Final Judgment is a final, appealable judgment and should be entered forthwith by the Clerk in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED: _____          _____
                                    The Honorable Thomas W. Thrash, Jr.
                                    Chief United States District Judge